Good morning, Your Honors. Patrick Duffy of N4, Mont Leon and McCrory. May it please the Court and Counsel. Ulyco in the trial court relied for the result below on the case of Pearlman v. Reliance Insurance. However, the result in Pearlman was solely based on equitable principles. The Court in that case evaluated the equities as between a surety and general creditors and determined as between the two the equities of the surety were superior. Pearlman reached this result recognizing that the surety's rights were solely equitable and forced solely for the purpose of accomplishing the ends of justice. In this case, the trial court erroneously concluded that when Ulyco paid its surety bond obligations as a matter of law, it automatically became the sole owner of Colt property wherever it was and to the full extent of its payment, and to the automatic exclusion of the lawyers whose labors obtained the funds. The trial court determination was, by definition, incorrect. There is no such law, there is no statute that would lead to that result. The result, again, in Pearlman was solely based on equitable, not legal principles. And the trial court's ultimate error was in failing to consider equity, in failing to act as a court of equity, and in failing to do equity. I'm not sure what the court could do here. This is a dispute between the estate and the surety. It's not between your law firm and the surety. Is that true? Yes, Your Honor. However, it would have developed into that had we been allowed to proceed. We would have proceeded to go after the funds, the $375,000 that the Los Angeles court had, the $100,000 we had in our own trust account, and Ulyco would have then become a proper party in that proceeding to determine if the bankruptcy court was correct that it was not an asset of the estate whose money it should rightfully be. Well, even if it is the surety's are you barred at this point from pursuing the surety directly in a separate proceeding with respect to your unpaid legal fees? Well, of course, it is conceivable we could proceed against the surety. However, the appropriate way is for the surety to pay the money back into the bankruptcy court and for the bankruptcy court to distribute it in the way it should have. Now, Ulyco, the bankruptcy court first of all determined that it wasn't estate property, which is a conclusion that simply is not supported. It certainly was cult property. The issue was who had the right to inherit that property? Who had the right to the property once collected? Can you help me here? I'm not sure I understand. 11 U.S.C. 541A, which provides that the bankruptcy estate includes, and I quote, all legal or equitable interests of the debtor. Yes, Your Honor. All legal or equitable interests of the debtor. No, I'm saying that the bankruptcy state did include this property, that the trial court was incorrect in concluding that it was not part of the bankruptcy estate. The trial court concluded that because of an equitable right of subrogation, somehow that property, which was a cult debt, a debt to cult, to the debtor, somehow automatically became Ulyco's property. That simply cannot be. It was, in fact, estate property. Why can't it? 541 also says that pure legal title in a debtor's estate does not bar, preclude the equitable owner, the beneficial interest owner, for example, from taking the property. Now, that would be, that that is a matter of law. In other words, if someone holds a legal title. That's not what the bankruptcy judge and the court here ruled, in essence, is that although subrogation is originally an equitable claim, at the time they paid, they take the equitable claim, but they also got the lien releases, which, of course, aren't a clear statement of title to a lien, but the bankruptcy appellate panel and the Ninth Circuit have recognized that an in-coit right to a mechanics lien, in other words, the time hasn't expired yet to record the lien, gives you the right to prevail against the estate. And what the bankruptcy court here ruled was that, in essence, that equitable right ripened into full ownership. When the insurance company paid the bond, paid for the materialman's and laborman's liens, in essence, got lien releases, they, it ripened into a title. Even if that were true, and I don't agree that it is because Perelman doesn't say that. It simply says they have an equitable right over the creditors. But even if that were true, they would be taking it subject to our attorney fee link. Normally, you have a very strong position. If you're an attorney, you have an attorney's lien, you produce the benefit. But here, because they paid the claim, they got the lien releases, they had the right to decide whether to pursue it. They had the right to decide who to hire as an attorney. They had the right to approve a settlement. You got a settlement, but you did it without the surety's consent to either your retention or your settlement. Well, if the surety knew exactly what was going on, chose not to pursue these rights, if we had not done so, the money never would have been collected. You have an equitable claim against the surety, but you certainly, in order to get a ripened equitable claim against the surety, you would have had to have approached them and say, is it okay if we keep going on this effort? Is it okay, more importantly, that we settle this one? But, Your Honor, the surety sat back and knew that we were appointed a special counsel, knew that we were the counsel for the debtor originally, sat back and watched us pursue for 21 months the collection of these funds. Well, that was the judge's question. Would you have a right to pursue in state court an equitable claim against the surety? And I suppose that's a question for a different day. You're prohibited from doing that here, right? Well, of course we couldn't make that request. We couldn't proceed against you like on the bankruptcy court. However, Your Honor, I still believe that the court sitting on these motions was a court in equity, and the basic premise in Perelman was that as between two challenging titles to this property, in equity, the balance was struck in favor of the surety and against general creditors. And I think the trial court here should have struck equity and should have said that their rights were secondary to ours for giving claims. Let me challenge you on that and ask you to respond, because it's a sincere question. The court chose the equitable interest of the surety as opposed to the estate. And why isn't that perfectly equitable? Because the insurance company paid for it. They paid for it. They paid to buy the claim, in essence, under their contract and under equitable title. They paid for the right, not only to pursue it, to decide who to retain as counsel, when to settle it. They bought the right to own it. But they didn't pursue it, Your Honor. And it would not have occurred without our efforts. And as a further equitable principle to consider here, you know, it's hard enough for a bankruptcy court under these circumstances to get retained counsel, where you only get paid if you prevail, and then only your hourly rate, and then only if it's considered reasonable, to throw this roadblock in as well. What law firm would ever, in their right minds, represent the estate in these circumstances if the court is not willing to equitably enforce the lien and make sure that the law firm that they hired to obtain the funds is paid? Thank you, Your Honor. Thank you, Counsel. We'll hear from EULICO, I guess. Yes. May it please the Court, Diana Rivera for Appali EULICO Casualty Company. I would like to start off by pointing out the standard of review here. Counsel, for... Could you answer the question just posed by opposing counsel? What incentive would there be for a law firm ever to take on a case like this if the lien did not have priority? Well, the law is clear, I believe, especially as to the post-petition fees, which is how the bankruptcy court rules here, that it's governed by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Bankruptcy Court's order, under which Monteleone and McCrory was authorized to act as special counsel in this case. Through those guidelines and through going through the court's normal procedures, that's how a special counsel gets paid for post-petition fees. Monteleone and McCrory wanted to take on this case as special counsel, filed an application as such, and in that order granting its employment as special counsel, it specifically stated the guidelines under how it was to be paid, and it knew what it was getting into. And what were those guidelines? That it just had to go through the normal court's procedures, follow the Bankruptcy Code, and follow the Federal Rules of Bankruptcy Procedure. In other words, it knew that it could only recover against the estate, couldn't recover personally against the trustee, for example. Right. And it also knew that it could only recover if, in fact, it produced an asset for the estate. Right. Additionally... But didn't it produce assets for the estate? It was counsel to the special counsel to the trustee. The litigation that had commenced, which the settlement proceeds were ultimately recovered in, was prior to the bankruptcy filing, and it just happened that it ultimately settled after the bankruptcy filing. So you're saying the 300 and some-odd thousand was settlement pre-bankruptcy. How much was sitting on deposit pre-bankruptcy? Was there any of it? There was none of it pre-bankruptcy, but there was the litigation and all the interest had arisen out of the construction contracts from years before the bankruptcy. Well, let me be more direct. This law firm has expended professional services in bringing a benefit to this bankruptcy proceeding, and you're taking the position that those fees are not recognizable as a lien because of the bankruptcy. What is your position with respect to when or if those fees will ever be compensated? First of all, Monteleone Macquarie was already awarded in this case by the bankruptcy court, I believe, approximately $60,000 or so as attorney's fees. So they have been awarded fees. They just want more. So they got, what was it, $48,000, $50,000, or was it $60,000? I'm not sure of the exact amount, but they were awarded by the bankruptcy court. They were assets in the estate, and to that extent, they got paid. Right. What the bankruptcy court ruled, and it's very important to note that Monteleone Macquarie in its reply brief states that it is not appealing the bankruptcy court's rulings in the adversary proceedings nor its judgment. Yet today, counsel was solely attacking those adversary proceeding rulings. Monteleone Macquarie nor the trustee did not appeal the bankruptcy court's rulings, and it's too late. The time has passed for it to appeal now that we're all the way at the Ninth Circuit when it didn't appeal it. That's right. That it's not an estate asset. Right. How about his question that he poses as between the attorney's fees and ULICO? You sat back. He settled. He brought in the, even if it's not for the bankruptcy estate, he brought it in for your benefit. I think that Monteleone Macquarie has sort of raised that as a smokescreen because we're dealing with two issues of fees here on its part. One was the pre-petition fees, and the other is the post-petition fees. The post-petition fees, as we've stated, the bankruptcy court has already awarded them an amount of fees, and I guess they're just not happy with that. The pre-petition fees, if it does have a lien, and it might have a lien, could only attach to Colt's property or the trustee's property, which is the property of the estate, because that's who the law firm's client was, not ULICO. The bankruptcy court ruled that the settlement funds, at least a portion of it, the approximately $500,000 amount, is ULICO's property under the equitable subrogation. Well, why couldn't his lien attach in rem to the claim that he was pursuing under California law? I assume it does, and there's two types of attorney's liens in California, and he can pursue it even as against ULICO. It may be final, that is between the estate and ULICO. This is not estate property, but why can't his lien in rem attach to the claim vis-a-vis you? I don't think the attorney fee lien can attach to a third party. I think it can only attach to... That is the claim in his hot hand that he's pursuing. Right, but that property has already been adjudged to be ULICO's property, and the time for appealing that... Why couldn't it be judged subject to the lien? Right, it could have been adjudged subject to the lien if Monteleone and McCord had ever brought up the lien. It never did that. It specifically violated Bankruptcy 11 U.S.C. 327E and 328C in the bankruptcy code, where it had to advise the court that it had this property, sought employment as special counsel, which it never did. It never even told the court about this alleged lien until now, until we're here on appeal. So it very well could have been adjudged that Monteleone and McCord... Are you saying that they would have been entitled to the fees had they filed the lien? They could have, and that would have been a matter of fact to be tried at the trial court level, but it was not raised there. Ms. Rivera, this sounds like a windfall to your client. It wasn't a windfall. The ruling at the bankruptcy court level was for ULICO to get approximately $500,000. As the court has pointed out, it was paid by ULICO out of ULICO's funds to material suppliers on three different construction projects for which ULICO issued payment and performance bonds. In addition to awarding ULICO that $500,000, Andrade and Associates, Colt's previous counsel, who did the vast majority of the litigation prior to Monteleone and McCord, just coming on a few months before the bankruptcy filing, was awarded attorney's about $100,000. And Merrill Lynch, which was another secured creditor of Colt's, was awarded, I don't know the exact dollar figure, but I think it was around $80,000. So it's not a windfall to ULICO. It's just the money that was rightfully owed to ULICO, since that's the exact dollar amount that ULICO paid to the suppliers. But ULICO did nothing to generate the funds from which it was able eventually to get compensated. If you let all of these other claims go, and this law firm on its own pursued those claims ultimately for your benefit. Colt and Monteleone and McCord never would have been able to even pursue the claims if ULICO did not pay off the subcontractors and material suppliers. Because provisions of all three construction contracts that issue here, which is Glendale Fashion Center, Long Beach Town Center, and San Diego Town Center, provided that Colt as a subcontractor to general contractors, RBNG Construction, Biltmore Construction, and another general, had to finish the projects lien-free before it would get paid final retention and the rest of its progress repayments. Colt didn't do that. Colt was unable to pay its sub-subcontractors and its material suppliers. And pursuant to the bonds, ULICO had to pay over $500,000 to those entities in order for the owners to ultimately release money and for the project to be completed. So we never would have even got to the point of Colt being able to sue for change orders or Colt being able to sue for delay or disruption damages, which is where these settlement proceeds came from, if ULICO didn't, in essence, complete the project by paying off the subs and the material suppliers who held those liens. And they were all recorded mechanics liens. They were definitely ripened interest. So the lien releases that ULICO got was necessary for the project to even be completed significantly prior to when Colt and Monteleone and McCord and Andrade and Associates, who was the main counsel and who's already been paid pursuant to the Bankruptcy Court for its attorney services, before they were even able to commence litigation. Mr. Duffy, you have some reserve time. Thank you very much, Your Honor. First of all, I'd like to correct the record. The amount that was in trust before the bankruptcy or in hand was $375,000, which had been collected and was in the Los Angeles Superior Court in which we resisted a ULICO motion to attach, successfully preserving it for the bankruptcy state. We generated $550,000 approximately in other lawsuits in which the Andrade firm was not involved in any way and disputed long litigation and recovered those funds. One thing we haven't addressed here is the context. This was a motion to lift stay. You filed a motion to lift stay. And maybe it's arguable that you should have been allowed at least to go into the state courts. The judge had ruled previously, and I think counsel is probably right, it was finalist between the estate and ULICO. This was ULICO's property and that's final. But perhaps the judge should have let you go in to the state courts to determine as between yourselves and ULICO. But that's the context here. It's a motion to lift stay and there's pretty broad discretion. In essence, what the bankruptcy judge was saying here, I'm sorry, you're going to have to come through the estate. That was the basis on which you took this lawsuit. That was the representation here. You made no representation of prior lien ownership or lawyer's lien. And therefore, I'm going to make you go through the estate. I'm sorry. And there's pretty broad discretion on a stay or lift stay issue. That's the context. And how do you get around that? A couple of things, Your Honor. First of all, the adversary proceeding in which the court was not a party to. It was not binding on us. And it was not binding on the court on these motions. And moreover, it was only... The attorney? Pardon? You were the attorney for the estate, the trustee. No, no, Your Honor. We were special counsel hired by the trustee to prosecute this case. We were not at the adversary proceeding. We were not a party to it. We didn't even know about it. So that result was not binding on us in these motions. Moreover, it was... The court, when it issued that order, said it was subject to... Its order was subject to the priority payments under the bankruptcy code that may be found to exist, which is one of which was ours. And the court... Remember, the funds were then held. There was $100,000 in our... Well, you're right. Assuming that you're not bound, I think there's maybe a problem with that because a finding by the bankruptcy estate in an adversary proceeding binds all the creditors. But nevertheless, assuming you're right, what's wrong with my statement that here the context is live-stay and the bankruptcy judge has pretty broad discretion? Basically, the bankruptcy judge said, you've got to come to the estate. I'm sorry, I'm not going to let you go directly in state court. You must come to the estate to claim your right to attorney's fees because that's the basis on which you are engaged. Even if he was correct in that or had discretion in that, or she, excuse me, the bankruptcy court aired an issue. We also appealed from their motion or their request that the court order those funds, the state funds, the funds in our trust account, all the funds be paid to a LICO. The court should have denied that order, and that would have allowed us to proceed at least in rem. Once the court ordered that money paid out, it was all gone, and there was nothing we could do. Thank you. Thank you, counsel. The case just argued will be submitted for decision, and we will hear  from the union planner's mortgage company.
judges: D.W. Nelson, O'Scannlain